UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES, *et al.*, | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 12-1354 (RMC) |
| VERIZON COMMUNICATIONS, INC., *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**OPINION**

After following the appropriate procedures under the Antitrust Procedures and Penalties Act, 15 U.S.C. §§ 16(b)-(h) (commonly known as the APPA or Tunney Act), the Government moves for entry of final judgment in this antitrust case. Mot. for Final J. [Dkt. 27]. As stated below, the motion will be granted.

**I. FACTS**

In December 2011, Verizon Communications, Inc. (Verizon) and Cellco Partnership d/b/a Verizon Wireless[1] entered into certain Commercial Agreements with Comcast Corporation, Time Warner Cable Inc., Bright House Networks LLC, and Cox Communications, Inc. (Cable Defendants). The Commercial Agreements allow the sale of bundled services such as Verizon Wireless services together with Cable Defendants' residential wireline voice, video, and broadband services. They also entered into a joint venture (a Joint Operating Entity or JOE) to develop integrated wireline and wireless technologies through research and development. The Government investigated and found that the Commercial Agreements would have certain

---

[1] Verizon Wireless is a joint venture by Verizon and Vodafone Group PLC and is operated and managed by Verizon.

anticompetitive effects in the marketplace. As a result, the Government filed this antitrust case against Verizon, Verizon Wireless, and the Cable Defendants (collectively, Defendants).[2] The Government alleges that Commercial Agreements between Defendants unreasonably restrain trade in violation of the Sherman Act, 15 U.S.C. § 1. Compl. [Dkt. 1] ¶¶ 45-47.

At the same time it filed the Complaint, the Government filed a Competitive Impact Statement (CIS) [Dkt. 3]; a proposed Final Judgment [Dkt. 2-1; refiled at Dkt. 27-1]; and a Stipulation and Order [Dkt. 2] whereby the parties agreed to entry of the Final Judgment after compliance with the Tunney Act requirements. The proposed Final Judgment is intended to remedy the anticompetitive effects of the Commercial Agreements between Defendants by preserving competition in numerous local markets for broadband, video, and wireless services.

In some areas, Verizon offers fiber-based voice, video, and broadband services under the trade name "FiOS." FiOS is offered in various areas in which the Cable Defendants also offer cable services. The Commercial Agreements would have resulted in Verizon retail stores selling two competing "quad play" (i.e., video, broadband, telephone, and mobile wireless services) packages: (1) Verizon Wireless and a Cable Defendant's services or (2) Verizon Wireless and Verizon FiOS services. The Government determined that the Commercial Agreements and the JOE would have diminished Verizon's incentives and ability to compete vigorously against the Cable Defendants with its FiOS services and that the JOE created a product development partnership with unlimited duration, which would decrease competition and innovation in the long term in a fast changing field. The Government negotiated a consent decree (*i.e.*, the proposed Final Judgment) with Defendants to remedy the anticompetitive effects of the Commercial Agreements.

---

[2] The State of New York joined the United States as a plaintiff in this case. This Opinion refers to Plaintiffs jointly as the Government.

To satisfy the Tunney Act requirement for public notice and comment, the Government published the proposed Final Judgment and CIS in the Federal Register on August 23, 2012, *see* Fed. Reg. 51048, and placed a summary for these documents in the Washington Post on August 18-24, 2012. As a result, the Government received and responded to comments from four entities: RCN Telecom Services LLC (RCN), a cable over-builder (*i.e.*, a facilities-based provider of wireline services); Communications Workers of America (CWA), a trade union representing workers in the telecom industry; Montgomery County, Maryland; and the City of Boston, Massachusetts (collectively, Objectors). *See* Gov't Resp. to Public Comments [Dkt. 26].

Asserting that the proposed Final Judgment provides an effective and appropriate remedy for the antitrust violations alleged in the Complaint, the Government now seeks entry of Final Judgment. RCN was granted leave to participate in this case, and it filed a Reply brief objecting to entry of the proposed Final Judgment and asserting the same concerns that it set forth during the comment period. *See* RCN Reply [Dkt. 31]; RCN Comments [Dkt. 26-3].

## II. LEGAL STANDARD

Entry of final judgment in antitrust cases is governed by a statute that requires that the Court determine whether entry of judgment is in the public interest:

> (e) Public interest determination
>
> (1) Before entering any consent judgment proposed by the United States under this section, the court shall determine that the entry of such judgment is in the public interest. For the purpose of such determination, the court shall consider—
>
> > (A) the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration of relief sought, anticipated effects of alternative remedies actually considered, whether its terms are ambiguous, and any other competitive considerations bearing upon the adequacy of

3

> such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest; and
>
> (B) the impact of entry of such judgment upon competition in the relevant market or markets, upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial.
>
> (2) Nothing in this section shall be construed to require the court to conduct an evidentiary hearing or to require the court to permit anyone to intervene.

15 U.S.C. § 16(e). A court must engage in an independent determination of whether the proposed consent judgment is in the public interest. *United States v. Microsoft Corp.*, 56 F.3d 1448, 1458 (D.C. Cir. 1995). Even so, a court's inquiry is limited, as the Government is entitled to "broad discretion to settle with the defendant within the reaches of public interest." *Id*. at 1461. "[A] district court is not permitted to reject the proposed remedies merely because the court believes other remedies are preferable." *United States v. SBC Commc'ns, Inc.*, 489 F. Supp. 2d 1, 15 (D.D.C. 2007) (citation omitted).[3] A court must determine "whether there is a factual foundation for the government's decisions such that its conclusions regarding the proposed settlement are reasonable." *Id*. at 15-16. Further, a court's proper role is to review the proposed consent decree in light of the allegations made in the complaint; a court may not "construct [its] own hypothetical case and then evaluate the decree against that case." *Microsoft*, 56 F.3d at 1459.

---

[3] A court is not required to hold an evidentiary hearing or to permit any intervenors. *SBC Commc'ns*, 489 F. Supp. 2d at 10. A court can make its public interest determination based on the competitive impact statement and response to public comments alone. *United States v. Enova Corp.*, 107 F. Supp. 2d 10, 17 (D.D.C. 2000).

### III. ANALYSIS

Applying this standard, the Court finds that there is a reasonable factual basis for the proposed Final Judgment; that the proposed Final Judgment sufficiently remedies the anticompetitive impact of the Defendants' Commercial Agreements; and that entry of the proposed Final Judgment is in the public interest. The objections do not convince the Court otherwise.

The proposed Final Judgment (1) forbids Verizon from selling the Cable Defendants' wireline services in areas where Verizon offers FiOS or is likely to offer FiOS in the foreseeable future; and (2) forbids Verizon from selling cable services after December 2016 to customers in areas where Verizon now sells Digital Subscriber Line (DSL) services. The Objectors argue that the geographic area where Verizon is forbidden to sell cable services should be defined more broadly in order to give Verizon the incentive to expand FiOS services. The Government reasonably considered and rejected this objection. While Verizon is required to build FiOS to millions of new households in the next few years due to existing franchise obligations, it also had determined, before entering the Commercial Agreements, not to build FiOS within its entire wireline footprint. Because it is unlikely that Verizon would have expanded FiOS beyond those areas required by franchise agreements, competitive harm in those areas is unlikely.

CWA and RCN argue that the proposed Final Judgment undermines the prohibition on Verizon's sale of cable services by permitting national and regional advertising, thereby resulting in Verizon's marketing of cable services within its FiOS footprint. The provision of the Final Judgment that permits advertising does not nullify the prohibition on the sale of cable services. *See* Proposed Final J. § V.C. Even if customers within the FiOS sales

5

area receive advertising for cable services, Verizon is still prohibited from selling them cable services.

CWA and RCN also contend that Verizon's ability to volunteer information regarding cable services without compensation also undercuts the prohibition on Verizon's sale of cable services. The proposed Final Judgment is designed to preserve competition between the sale of services by the Cable Defendants and the sale of FiOS by Verizon. Permitting Verizon to provide free information regarding cable services does not impinge on Verizon's incentive to sell FiOS, which was the competitive harm alleged in the complaint.

CWA also objects to § V.C of the proposed Final Judgment, which allows Verizon Wireless to provide service and support to Verizon Wireless equipment sold by a Cable Defendant. Retail stores operated by Cable Defendants are not widespread; Cable Defendants make most of their sales via telephone, internet, or door-to-door. Customers that purchase Verizon Wireless equipment might obtain their devices, or seek help setting up service, at a Verizon Wireless store, and the proposed Final Judgment permits Verizon Wireless to provide such service at stores within its FiOS footprint or to customers who live within the FiOS footprint. This service does not undermine the marketing advantage of FiOS within the FiOS footprint and does not vitiate the prohibition on Verizon Wireless from selling cable services in the FiOS footprint.

CWA objects to (1) § V.I, which prohibits Verizon from entering into agreements with Cable Defendants regarding the sale of Verizon wireline services, Verizon Wireless services, cable services, or the joint development of technology or services without prior Government approval; and (2) § V.J, which prohibits agreements between Cable Defendants and Verizon wireline services regarding the price, terms, and availability of cable and wireline

services.  These sections include exceptions for certain types of agreements.  CWA complains that the exceptions are loopholes that will allow Defendants to collude on price.  But the exceptions cover categories of agreements that do not pose anticompetitive concerns, such as agreements regarding video content, intellectual property licenses, the purchase of advertising, the lease of real estate in the ordinary course, and interconnection agreements between the Cable Defendants and Verizon.  Moreover, to ensure that the proposed Final Judgment does not condone anticompetitive agreements, it contains a savings clause that states "in no event shall a Defendant participate in, encourage, or facilitate any agreement or understanding between [Verizon entities offering wireline services] and a Cable Defendant that violates the antitrust laws of the United States."  Proposed Final J. § V.J.

RCN opines that the technology developed by the JOE will quickly become the industry standard due to the large size of the JOE participants.  In order to maintain competition, RCN seeks a requirement that the products developed by the JOE shall be made available to other wired broadband providers on a reasonable and nondiscriminatory basis.  The proposed Final Judgment does not address this issue because this concern was not raised in the Complaint.  The Court's role is to review the proposed Final Judgment in light of the allegations made in the complaint.  *See Microsoft*, 56 F.3d at 1459.  The Complaint alleges that the JOE may unreasonably restrict its members from innovating outside the joint venture.  Compl. ¶ 40.  To rectify this problem, the proposed Final Judgment limits the duration of the JOE and provides that when any participant leaves the JOE, it will have a non-exclusive license to use and

sublicense all of the JOE's technology. Thus, the proposed Final Judgment addresses the issues raised in the Complaint.[4]

RCN further claims that the "FiOS Footprint" as defined in the proposed Final Judgment is ambiguous since it is unclear whether Verizon's franchise to provide service in the District of Columbia is a "statewide" or a "non-statewide" franchise.[5] RCN errs in claiming an ambiguity with regard to the District. Verizon's franchise with the District of Columbia requires it to offer video services to residential areas throughout the District by 2018. In other words, the entire District is within the definition of the FiOS Footprint.

Montgomery County asks that the Court require Defendants to build out their services to every residential unit in the County without limitation. The proposed Final Judgment does not include this requirement because the proposed Final Judgment is tailored to the harms identified in the Complaint. The purpose of the proposed Final Judgment is to ensure that Defendants have the same incentive to compete as they did before they entered into the Commercial Agreements. The requirement sought by Montgomery County is outside the scope of this litigation.

The County also claims broadly that the proposed Final Judgment is not in the public interest because it permits cooperation among Defendants and will lead to the allocation

---

[4] RCN also complains that, under the Commercial Agreements, Verizon Wireless must give the Cable Defendants preference when Verizon Wireless purchases "backhaul services," the services whereby data is carried from wireless cell sites to wireline networks. The proposed Final Judgment does not address this issue because it was not raised in the Complaint.

[5] The FiOS Footprint is "any territory in which Verizon at the date of entry of this Final Judgment or at any time in the future: (i) has built out the capability to deliver FiOS Services, (ii) has a legally binding commitment in effect to build out the capability to deliver FiOS Services, (iii) has a non-statewide franchise agreement or similar grant in effect authorizing Verizon to build out the capability to deliver FiOS Services pursuant to a statewide franchise agreement." Proposed Final J. § II.M.

of markets. The Government does not foresee the allocation of markets. Moreover, there are possible benefits to competition and consumers through new products created by the JOE. Again, the proposed Final Judgment remedies the anticompetitive effects of the Commercial Agreements that were identified in the Complaint.

## IV. CONCLUSION

For the reasons stated above, the Court concludes that the proposed Final Judgment is in the public interest. The Government's motion for entry of final judgment [Dkt. 27] will be granted, and Final Judgment will be entered as proposed. A memorializing Order accompanies this Opinion.


DATE: August 9, 2013

/s/
ROSEMARY M. COLLYER
United States District Judge